**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

PATRICE SINKFIELD-MOREY,

                                              Civil No. 24-2875 (JRT/SGE)

                          Plaintiff,

v.                                            **MEMORANDUM OPINION AND ORDER**
                                              **DENYING DEFENDANT'S MOTION FOR**
                                              **JUDGMENT ON THE PLEADINGS AND**
MINNESOTA LIFE INSURANCE COMPANY,             **PLAINTIFF'S MOTION FOR SUMMARY**
                                              **JUDGMENT**
                          Defendant.

Andjelka Moline and James E. Lindell, **LINDELL & LAVOIE, LLP**, 431 South Seventh Street, Suite 2420, Minneapolis, MN 55415, for Plaintiff.

Molly Renee Hamilton Cawley and Terrance J. Wagener, **MESSERLI & KRAMER P.A.**, 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402, for Defendant.

After Plaintiff Patrice Sinkfield-Morey's son, Justin Sinkfield, died from a drug overdose, Sinkfield-Morey sought payment of benefits as the beneficiary to Sinkfield's accidental death and dismemberment policy issued by Defendant Minnesota Life Insurance Company ("Minnesota Life"). Minnesota Life, under discretionary power, interpreted the terms of the policy to exclude coverage for Sinkfield's death. Sinkfield-Morey then brought this action to challenge Minnesota Life's denial of accidental death benefits. Minnesota Life now moves for judgment on the pleadings, and Sinkfield-Morey moves for summary judgment. After reviewing Minnesota Life's interpretation of its policy terms under an abuse of discretion standard, the Court finds that Minnesota Life's

interpretation is reasonable.  But the Court has insufficient information to evaluate the impact of the conflict of interest created by Minnesota Life being both the plan evaluator and claim payer.  Accordingly, the Court will deny both motions and order additional discovery on Minnesota Life's conflict of interest.

## BACKGROUND

### I.    FACTS

On January 14, 2023, Justin Sinkfield ingested, for recreational purposes, what he believed to be oxycodone.  (Compl. ¶¶ 8, 10, July 22, 2024, Docket No. 1.)  Sinkfield was not actively under the influence of any drugs when he consumed the drug.  (*Id.* ¶¶ 10, 18.)  After he ingested the drug, Sinkfield became unconscious and ultimately died.  (*Id.* ¶¶ 11–12.)  An autopsy revealed that Sinkfield died of "Fentanyl and Despropionyl Fentanyl Toxicity," meaning that, instead of oxycodone, Sinkfield had ingested a fatal dose of fentanyl.  (*Id.* ¶ 13.)  Sinkfield's death was ruled an accident.  (*Id.*)

At the time of his death, Sinkfield's accidental death and dismemberment insurance policy ("Policy") issued by Minnesota Life was in full force and effect.  (*Id.* ¶ 7.)  Patrice Sinkfield-Morey, Sinkfield's mother, was the named beneficiary on the Policy.  (*Id.* ¶ 3.)

After Sinkfield's death, Sinkfield-Morey brought a claim for accidental death benefits under the Policy.  (*Id.* ¶ 14.)  Minnesota Life denied Sinkfield-Morey's claim for benefits, having determined that Sinkfield's death was not accidental and that the Policy's exclusion for accidental deaths caused by drug ingestion applied.  (*Id.* ¶ 15, Ex. 2 ("Denial

Letter") at 1–2.) Sinkfield-Morey appealed the denial, which Minnesota Life affirmed. (Compl. ¶¶ 16–17.)

Under the Policy, accidental death or dismemberment by accidental injury means "an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen." (*Id.* ¶ 7, Ex. 1 ("Policy") at 7.) The Policy lists several exclusions from coverage, which are introduced by a preamble stating, "In no event will [Minnesota Life] pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following[.]" (*Id.* at 9.) The exclusion at issue ("Exclusion 7") excludes "being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage." (*Id.*) The Policy also provides express discretionary authority to Minnesota Life to make benefits determinations and interpret Policy terms, and it names Minnesota Life as the party responsible for paying approved claims. (*Id.* at 6, 8.)

## II. PROCEDURAL HISTORY

Sinkfield-Morey brought this action to collect accidental death benefits, in the amount of $114,000, and other relief. (Compl. ¶¶ 23–26.) Minnesota Life answered and admitted that Sinkfield was covered by the Policy at the time of his death, that Sinkfield died from ingesting fentanyl, and that Minnesota Life denied benefits. (Answer ¶¶ 3, 13–17, Aug. 12, 2024, Docket No. 9.)

Minnesota Life then moved for judgment on the pleadings. (Def.'s Mot. J. Pleadings, Aug. 13, 2024, Docket No. 11.) After the deadline to respond had passed, Minnesota Life requested the Court hear the motion on the papers because Sinkfield-Morey had not responded. (Def.'s Reply at 1, Sept. 16, 2024, Docket No. 16.) Shortly thereafter, Sinkfield-Morey responded to Minnesota Life's Motion for Judgment on the Pleadings and then Sinkfield-Morey filed a Motion for Summary Judgment.[1] (Pl.'s Mem. Opp'n Mot. J. Pleadings, Sept. 24, 2024, Docket No. 17; Pl.'s Mot. Summ. J., Oct. 16, 2024, Docket No. 22.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

---

[1] Sinkfield-Morey failed to timely file her opposition brief and then filed a Motion for Summary Judgment instead of the expected motion for judgment on the pleadings. Because Minnesota Life suffered no prejudice from these procedural errors, the Court will not impose any sanctions on Sinkfield-Morey. The Court does strongly recommend, however, that Counsel more carefully review and apply the local rules.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Despite filing motions with different labels, the parties indicated at oral argument that they agree the Court can issue judgment as a matter of law.[2]

## II.    ANALYSIS

Minnesota Life denied coverage for two independent reasons: Sinkfield's death was not accidental and even if it was, his death was excluded from coverage under Exclusion 7.  Minnesota Life assumes for the purposes of its motion that Sinkfield's death was accidental, so the only dispute at is issue is the applicability of Exclusion 7.

Courts review a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) de novo unless the policy unambiguously grants the administrator discretion in making claim decisions and in interpreting the terms of the policy, in which case courts apply an abuse of discretion standard.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989).  Under the abuse of discretion standard, an administrator's interpretation of a term will not be disturbed unless it is unreasonable.  *King v. Harford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

---

[2] Sinkfield-Morey attached two exhibits to her Motion for Summary Judgment: Sinkfield's death certificate and the police report from the night Sinkfield died.  Because these exhibits are not embraced by the Complaint and unnecessary to the Court's analysis, the Court will exclude those exhibits from consideration.

Because the Policy unambiguously grants Minnesota Life the discretionary authority to make coverage decisions and interpret terms of the Policy,[3] the Court will apply the abuse of discretion standard. So, the only question is whether Minnesota Life's interpretation is reasonable.

In determining the reasonableness of an administrator's interpretation, courts consider various factors, including,

> whether their interpretation is consistent with the goals of the [Policy], whether their interpretation renders any language in the [Policy] meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the [Policy].

*Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). When an administrator has offered a reasonable interpretation, courts may not insert their own interpretation because under an abuse of discretion review, courts are not tasked with determining the "best or preferable interpretation." *Kutten v. Sun Life Assurance Co. of*

---

[3] Sinkfield-Morey argues that Minnesota Life failed to meet its burden to show the Court that notice of the discretionary power had been adequately provided to Sinkfield. Sinkfield-Morey pointed the Court to no authority suggesting that Minnesota Life bears the burden to show notice was adequate. It is true that courts require the grant of discretionary power to be unambiguous and appropriately noticed to garner abuse of discretion review. *See, e.g.*, *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 427 (1st Cir. 2016). Here, the Policy itself provided sufficient notice and Sinkfield-Morey has provided no evidence to suggest that Sinkfield did not receive the Policy. Therefore, the Court finds that Sinkfield had adequate notice of Minnesota Life's discretionary power.

*Can.*, 759 F.3d 942, 945 (8th Cir. 2014).  When a plan provides discretionary power to an insurer who also administers the plan, courts must consider this conflict of interest as a factor in determining whether there is an abuse of discretion.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. of Trs.*, 64 F.4th 951, 958 (8th Cir. 2023) (affirming that the conflict of interest is a factor to be weighed in the abuse of discretion evaluation).

The parties offer competing interpretations of Exclusion 7.  On the one hand, Minnesota Life, relying on *McGuiggin v. Zurich*, No. 17-11523, 2019 WL 1333268, at *4–5 (D. Mass. Mar. 25, 2019), argues that Sinkfield's death is excluded by Exclusion 7 because his death occurred after taking unprescribed drugs and thus "result[ed] from or [wa]s caused directly or indirectly by . . . being under the influence." (Policy at 9.)  On the other hand, Sinkfield-Morey argues that "being under the influence" must be a precondition to the ultimate cause of death.  In other words, Sinkfield-Morey's interpretation would require the decedent to already be under the influence whenever the fatal incident takes place, here ingesting the fatal dose of fentanyl.

Sinkfield-Morey's interpretation appears to be the more natural reading of Exclusion 7 and likely represents the intent of the drafters, *see Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 967 (8th Cir. 2004), but that does not render Minnesota Life's interpretation unreasonable.  The reasonableness of Minnesota Life's interpretation is bolstered by the broadening language in the preamble to the exclusions.  The death need

not be a direct outcome of "being under the influence," but rather the death must be "caused directly or **indirectly**" by "being under the influence." (Policy at 9 (emphasis added).) Additionally, nothing in Exclusion 7 prohibits its application to accidental overdoses. Because Minnesota Life's interpretation is not unreasonable, the Court will abide by that interpretation.[4]

Notwithstanding Minnesota Life's reasonable interpretation of Exclusion 7, the Court must also consider the conflict of interest created by the fact that Minnesota Life has discretionary authority to make the coverage decisions and is responsible for paying the claims. *Glenn*, 554 U.S. at 114. Identifying the conflict of interest is not intended to render the standard of review de novo in every case but instead is one of many factors to be considered under the abuse of discretion standard. *Id.* at 116.

Evaluation of the conflict of interest is mandated, but the record before the Court allows for no meaningful review. There is nothing in the record about Minnesota Life's evaluation of claims and potential impact of the conflict. It may very well turn out that Minnesota Life properly conducted the claim evaluation and appropriatel applied its reasonable interpretation to Sinkfield's Policy. But the Court is unable to thoroughly

---

[4] The parties do not discuss the *Finley* factors, but their arguments essentially evaluate whether the administrator's interpretation contradicts the plain language of the Policy. Here, that factor supports a finding that Minnesota Life reasonably interpreted the terms of the Policy. As for the other *Finley* factors, nothing indicates that Minnesota Life's interpretation would frustrate the goals of the Policy or render the language inconsistent or meaningless. Nor does the record suggest that Minnesota Life has inconsistently interpreted these words or that the substantive or procedural requirements of ERISA are impacted.

evaluate the conflict's weight without more discovery. And the Court remains troubled by insurance providers playing this dual role that is inherently unfair to those covered by the policies. So, despite the parties' agreement that the claim is ripe for judicial decision, the Court is unsatisfied by the record and will deny both motions to allow for additional discovery on Minnesota Life's conflict of interest created by its role as both plan evaluator and claim payer.

## CONCLUSION

Under its discretionary authority, Minnesota Life reasonably interpreted its Policy to mean that Sinkfield's death falls within the scope of Exclusion 7. Notwithstanding that Exclusion 7 is more naturally read a different way or the Court's desire to impose a different interpretation, under abuse of discretion review, Minnesota Life's reasonable interpretation prevails. However, the Court is unable to weigh the conflict of interest created by Minnesota Life's dual role as both plan evaluator and claim payer. Therefore, the Court will deny both motions and order additional discovery so that it may properly evaluate the conflict of interest.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Motion for Judgment on the Pleadings [Docket No. 11] is **DENIED**.

2.  Plaintiff's Motion for Summary Judgment [Docket No. 22] is **DENIED**.


DATED:  March 25, 2025
at Minneapolis, Minnesota.

                                            JOHN R. TUNHEIM
                                       United States District Judge